## LONNIE KING v. THE STATE.

No. 20841. Delivered February 14, 1940.
Rehearing Denied March 20, 1940.
Application for Leave to File Second Motion for Rehearing
Denied (Without Written Opinion) April 3, 1940.

The opinion states the case.

*Percy Woodard*, of Marshall, for appellant.

*Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted of cattle theft, and by the jury assessed a penalty of six years in the penitentiary.

There are no bills of exception in the record. The statement of facts shows sufficient facts upon which the jury could base their verdict of guilt. The indictment appears to be sufficient, and all proceedings appear to be regular.

The judgment is affirmed.

### ON APPELLANT'S MOTION FOR REHEARING.

CHRISTIAN, Judge.

In his motion for rehearing appellant reiterates his contention that the evidence is insufficient.

Mrs. Jim Mobley testified that on the 7th day of November, 1938, she lost one head of cattle from her pasture; that when she discovered that the animal was missing she called the officers; that in response to her call the sheriff and one of his deputies came to her home; that she and the officers went to appellant's home; that they found tracks leading from the home of the appellant to a point 300 yards from the cow pen of the witness; that at the point last mentioned they found where a cow had been butchered; that they also discovered tracks going from the point where the cow was butchered to appellant's home; that one of the officers carried appellant to the place where the butchered animal was found and placed his feet in the tracks; that the tracks fit appellant's feet; that appellant had blood on his back at the time he was brought to the place where the animal had been butchered; that witness did not give appellant nor anyone else permission to take her yearling.

The sheriff testified to having gone with Mrs. Mobley to the place where the animal was butchered. We quote from his testimony as follows: "We went down around the edge of the pasture or field there, possibly 250 or 300 yards from the house, and found where the yearling had been butchered and we found the wire fence torn down, and out in the woods there found the hide, head and feet. We found where the yearling had been butchered. We came back and tracked the party, where the party came to where the yearling was butchered, and came then across the field to Lonnie King's (appellant's) house. We then arrested Lonnie King and put him in jail. I did something in relation to the tracks we found, we put his

shoe or track in the same tracks and the tracks fit and I found some blood on the back of his jumper. We recovered part of the yearling later, some of the meat. He sold it for four dollars and got one dollar on it from a negro at the brick plant. I got the information that a party had hauled it in, and he told me where the meat was at. I tracked the track from where the calf was butchered through these woods to a fence row where he laid it on some brush on a croca sack. Lonnie King told me that he put the meat on the old fence row the night before. From the information I got from Lonnie King I recovered the meat."

John Jones, a witness for the State, testified that on the 7th of November, 1938, he bought part of a beef from appellant. On cross-examination he said: "I don't know where I saw you (referring to appellant) on the 7th day of November, 1938, but I saw you when you brought the yearling over there, when you sold me part of the yearling."

Appellant testified on his direct-examination as follows: "The way that was this Isaac Taylor come and got me that evening about dusk dark. He came and got me then; he had been giving me whisky all the time. He come and got me and said he had a drink for me and I said 'All right.' I went to the house with him. When we got to the house he said 'You want to walk around some?' We had drank nearly a pint. We walked down there and two more boys had the yearling down and skinned nearly, the car setting on the side of the road. We drank some more down there. They said, 'Cut him up.' Said 'Help carry this.' I went back to the car with them. They got in the car and went on and I came back across the field to the house. That is the way it was."

On his cross-examination appellant denied that he had sold John Jones any meat.

We have set out and referred to substantially all of the testimony adduced upon the trial. We deem such testimony sufficient to support the judgment of conviction.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.